May I please record, I'm Matt Adams with Northwest Immigrant Rights Project for the petitioner Savino-Gonzalez. Mr. Gonzalez is a 51-year-old citizen of Mexico who's lived in the United States for over 20 years. He's also the single parent of three teenage U.S. citizen children, two of whom suffer from severe developmental disabilities. This case presents the isolated issue of whether Mr. Gonzalez is eligible to apply for cancellation of removal for non-permanent residence under Section 240A.B.1. In order to qualify for cancellation, a person must demonstrate they have at least 10 years continuous residency, they have qualifying relatives like his children that would suffer exceptional and extremely unusual hardship if he were has been convicted of an offense under Section 212A.2 or Section 237A.2 or 3 is not eligible for cancellation. The board found that he had been convicted of an offense under Section 230A.7.2, namely that he had been convicted, that he fell under the ground of deportability for a conviction of domestic violence at Section 237A.2.E.i. But Mr. Gonzalez has never been admitted to the United States. He is not subject to the grounds of deportation. The board erred in trying to add language to the statute in order to make this ground apply to him. The board found that instead of accepting the statutory language, convicted of an offense under, that they should, the statute should instead be read to include the word described. Convicted of an offense described under Section 237A.2. The board erred. MS. MOSS III Excuse me for interrupting, but since your time is short. When I read this case, I asked myself the question, does it make any sense to say, you argued the plain meaning of the statute, to say an avian who has been admitted to this country could be found inadmissible for deportation and removal for an offense, and an avian who has been living here without documentation could not be denied relief for? Are you saying that that's what the law says, and that's the way it is? MR. BARROWS That is what the law says. There's two separate grounds that apply to two classes of people. Persons who have not been admitted are subject to the grounds of inadmissibility. And they are subject to grounds that persons who are deportable don't have to face. For example, persons who have not even been convicted of crimes can be found inadmissible if they admit to the essential elements. On the other hand, persons who have already been admitted are subject to some grounds of deportation that persons who have not been admitted don't face. For example, a person who's convicted of domestic violence can still be admitted to the United States. A person who's convicted of firearms can still be admitted. This Court, in separate cases looking at a separate form of relief, examined an equal protection challenge to the fact that persons who have been admitted face this, face some grounds that persons who have not been admitted face. And this Court, in Teneguchi v. Schultz, specifically said that that was, that Congress had chosen to treat persons who had been admitted with a different and had applied a different amount of responsibility to them and, quote, that they enjoy substantial rights and privileges not shared by other aliens and, therefore, it is arguably proper to hold them to a higher standard and level of responsibility, unquote. So this Court has already addressed the issue precisely regarding your question, that, yes, persons who have been admitted face added responsibilities in some aspects. But, of course, in other aspects, persons who have not been admitted face a much larger task, a much more difficult task of gaining admission, because there are several grounds of admissibility that apply only to persons who have not been admitted. The Teneguchi case is a 2001 case. Is that correct? That is correct. I just find it a little difficult to imagine that Congress intended to give a free pass on domestic violence to illegal aliens. This is not a free pass. He is still has to demonstrate that he merits the discretionary relief. We're talking about a form of relief that was drastically modified in 1996 that cut back by far the number of persons who qualify. They used to the person in the past used to have to demonstrate that they would suffer extreme hardship to themselves or to other family members. But Congress changed that and said now extreme hardship is not enough. It has to be exceptional and extremely unusual hardship. And it no longer matters whether it's hardship to that person. It has to be hardship to a qualifying family member. But most important, Congress-wise, it's expressed language. It said the person must have been convicted of a crime of domestic violence, and that conviction must have occurred after admission. Indeed, a person who's been admitted and who has been convicted of a crime of domestic violence still would be eligible to apply for cancellation if that conviction occurred prior to their admission. For example, if a person was convicted of domestic violence in their home country and then applied for admission under a visitor's visa or student visa, and they would qualify since there's no ground of inadmissibility for domestic violence. So they're lawfully allowed to come into the country, and they remained in the country. They overstayed their visa. After 10 years, they would be eligible to apply for cancellation. And the reason is because their conviction did not occur after admission. It would be absurd for Congress to say, no, this person doesn't qualify even though they're lawfully allowed into this country because they have a statute that says that the conviction must have occurred at any time after admission. Likewise, in this case, Petitioner has never been admitted, and that is why he is not subject to the grounds of deportability. Even if you accepted the Board's interpretation, an offense described under 237A2, Petitioner has not been convicted of an offense described under 237A2 because 237A2e1 has, as it were, two elements, that they've been convicted of a crime of domestic violence and the conviction did not occur after the admission. Kennedy. So the government says the plain language compels one result. You say the plain language compels the other result. Why doesn't the Chevron deference apply? First of all, we argue that while the government states that the plain language does control, the substance of their arguments show to the contrary. They try to bring up congressional intent. They try to read additional language into the argument. So we believe that the substance of the government arguments clearly demonstrates that they don't believe the plain language controls. Second of all, this Court has clarified that when construing a statute to determine congressional intent, that you have to look at the standard rules of statutory construction. And I think particularly instructive is that this Court's statement which repeats the standard rule of traditional construction that says, Certainly what we have here is an ameliorative statute. Petitioner is deported or rather he's inadmissible, subject to removal, and his only opportunity to stay here, his children's only opportunity to either remain with their father or be separated from the crucial services that they receive to help them deal with their developmental disabilities, is that he at least have the opportunity to apply. The government is arguing that he's not even eligible to apply. But this Court should, pursuant to its previous instructions, like in Hernandez-Oshkoff, read the manner in a restrictive sense. Indeed, read the manner according to the express language of the statute. The Board states if this is really what Congress wanted, then they would have just said the person is removable pursuant to Section 212.82 or the person is inadmissible or deportable pursuant to 212.82 or 237.82. But that would have rendered a significant change in the meaning because many persons are removable who have never been convicted. You can be inadmissible even though you haven't been convicted. Likewise, there's grounds of deportability where you have not been convicted. But the clear language of the statute says not only do they have to be deportable or inadmissible pursuant to that statute, but they have to be convicted. They have to have been convicted of an offense under that provision. Indeed, what the government is trying to say is, well, Congress kind of screwed up here. What they really wanted to do is what they did in Section 101F, because there what someone can establish good moral character if their conduct falls under these paragraphs, quote, whether or not inadmissible, unquote. And that's what the government is trying to get us to accept here, is that really what Congress meant to say is that if they've been convicted of a crime of domestic violence, whether or not they're deportable, unquote, they don't qualify for cancellation of removal. Is anyone ever convicted of a non-criminal offense under the INA? Is anyone? I'm sorry? Is anyone ever, quote, convicted of a non-criminal offense under the INA? Persons are certainly deported for not being convicted. Is anyone ever convicted? No. Conviction is criminal language. You have to have your criminal conviction. What we're saying is that a person can be deported, for example, for being a drug abuser or addict after admission. But that would not render them or preclude them from qualifying for cancellation because the statute says they have to have been convicted of an offense under Section 237.82. Thank you, counsel. Thank you. Thank you, Your Honors. And good morning again. John Cunningham from the Justice Department appearing on behalf of the Attorney General. May it please the Court. I'd like to begin by simply noting a couple of things. What is not before you in this case is whether this Petitioner was, in fact, convicted of the crime of domestic violence and that he was he committed an assault upon his domestic partner. He hit her in the face with his fist, causing bleeding and swelling. So unlike the previous case, you don't have that issue before you. That was litigated vigorously before the Board of the Immigration Judge but has been abandoned on appeal. This case turns on a very fine question of statutory construction, which is what is the meaning of the phrase under Section 237.82 of the Immigration Act. The Supreme Court heard argument earlier this week on the meaning of the word subparagraph in the Truth in Lending Act, and Justice Breyer, during the argument, said that when he's asked to perform this kind of close statutory construction, he begins by assuming the persona of an English-speaking Martian. And I think what he meant was he's just landed on earth. He knows nothing about the Truth in Lending Act. He sat down in a chair and asked what is the meaning of subparagraph in this particular provision. I think that approach works here. If your hypothetical English-speaking Martian was sat down at a table and he knew nothing about immigration or the Immigration Act or cancellation of removal and was asked what does the phrase convicted of an offense under Section 237.82 mean to you, his first answer might be what you hit it at, Judge Nelson. He might say, well, that sounds like has the guy been convicted of violating Section 237.82. And the answer to that might be, well, good try, good guess, but that doesn't work because this section is not a criminal provision. Instead, it lists certain crimes. And our Martian might then say, well, then what it must mean is has the person been convicted of one of the crimes listed in Section 237.82. And the answer to that is yes, because Section 237.82 includes crimes of domestic violence. That's how the Board came out. And, Judge Thomas, you mentioned whether we're in a Chevron Step 1 case. I think we are. The Board basically applied a plain reading language of the plain reading analysis of the provision in question and came out with a perfectly ordinary, unstrained common sense result, which was that the word under means, in effect, listed under or referred to or covered by Section 237.82. And that is our submission to you today. The Petitioner's approach is to roll in other considerations, such as whether the conviction occurred before or after admission to the United States and was there an admission to the United States. There are two answers to that. One is that the crimes listed in Section 237.82 do not include as their particular definitions any element of whether the alien was admitted or not. It simply says these are the crimes that are covered and this is how we define them. The crime of domestic violence has a specific reference to Title 18 of the U.S. Code. That's the definition of the crime in question. And when you're trying to decide whether a particular alien is eligible for cancellation or removal, you look to whether he committed a crime listed, covered by Section 237.82, in this case domestic violence, and you come out very quickly with an answer of yes. The problem with that, that I have, in other statutes, Congress has specifically mentioned aliens who have been admitted, who at any time after admission. Yes. There are several other statutes, and it shows to me that Congress knows what it's doing, I mean, it specifies it when it wants to, and in this case did not. Well, that's my second point, Your Honor. The question whether the alien was admitted or not is very important when you're measuring whether he is, in fact, subject to removal. And that's true because although Section 212, which covers grounds for inadmissibility, and Section 237, which covers grounds for deportability, includes similar kinds of offenses, they treat those offenses differently. For example, crimes involving moral turpitude are treated differently in Section 212 than they are in Section 237. Multiple criminal convictions are treated differently in Section 212 and Section 237. So when you are considering that question, was a particular alien, for example, properly charged and properly found subject to removal, the question of whether he was admitted or not becomes very important. I agree with my colleague to that extent. The phrases after admission become very important. If you commit a crime of domestic violence after admission, then you may be properly charged with being subject to deportation under that particular provision of Section 237. But here we're simply talking about the grounds for eligibility for a particular form of discretionary relief cancellation of removal. We're not talking about removability and whether you should be charged as an inadmissible alien or a deportable alien. We are simply talking about whether the limitations on eligibility for cancellation of removal that Congress put in place cover anyone who has been convicted of a crime falling under three specific sections that Congress listed in the Act. The Board looked at this question in this case and came out with the right result. The one last bit of one last note, if I may, my colleague, if I heard him right, protested the fact that our brief referred to legislative history. And this gets us back to the Chevron Step 1 issue that you raised, Judge Thomas. There is an ongoing dispute within the Supreme Court over whether it's proper to look at legislative history when you are considering a plain language analysis. Justice Scalia and I think Justice Thomas would like it very much if Chevron Step 1 excluded legislative history entirely. But the majority of their colleagues on the Court haven't bought into that quite yet. And I think that's pretty clear. I'm proud of Williamson that in Step 1 you do legislative history, you can examine the structure of the statute as well as the plain language. Exactly so. So we weren't we were not sort of sliding from Step 1 to Step 2 when we resorted to legislative history in our brief, nor were we sliding from Step 1 to Step 2 when we suggested that some guidance on this question can be taken from looking at other provisions of the Act. And I would like to draw the Court's attention to two other provisions within the cancellation of removal provision. First, Section B2A4, this is the provision that falls as part of the special rule for battered spouses and children. One of the things that the alien must not be one of the disabilities that he must not have is, and this is this I'm quoting from the statute, the alien is not inadmissible under Paragraph 2 or 3 of Section 212a and is not deportable under Paragraphs 1g or 2 through 4 of Section 237a. There is Congress being very careful about rolling in references to inadmissibility or deportability for that particular case. The same thing occurs later on in the same statute, the same cancellation rule. This is the stop-time rule. And in Section D1, the stop-time rule, that is, the alien's inability to accrue physical presence here in the U.S., it stops when the alien is served a notice to appear under Section 239a or b, when the alien has committed an offense referred to in Section 212a2. So, so far, we're more or less in sync with the provision that we're talking about this morning. But then Congress went on to say that renders the alien inadmissible to the United States under Section 212a2 or removable from the United States under Section 237a2 or 237a4. There again, Congress is drawing a distinction between whether the alien committed a crime or an offense falling under Section – falling under the cancellation of removal provisions or whether he is, in fact, inadmissible or removable. So in two different provisions of the same statute that we're talking about today, Congress did very carefully include the inadmissibility and deportability provisions. It didn't do so when it talks about whether the person has been convicted of an offense under Section 212a2, 237a2, or 237a3. And finally, my time, I see, is nearly up. The anomaly that – that Judge Nelson, you referred to, is present in this courtroom today because you heard in the previous case involving Dr. Fong, his counsel admitted that as a lawful permanent resident, if he is – if his conviction for domestic violence is upheld by – as part of your review of that case, then, according to his counsel, he is not eligible for cancellation of removal. This case presents an attempt to place someone who was never admitted to the U.S. in a more advantageous legal position as compared to someone like Dr. Fong, who was successful in obtaining lawful permanent resident status. The Constitution raised that. What do you do with the Tappanucci case? It says legal permanent residents, because of all their advantages here, may be held to a higher standard. Yes. And that's – I think the – I think the context is important there, Judge Nelson, because that was an equal protection challenge. And when the Court hears an equal protection challenge to a provision of the Immigration Act, it – it – it looks into whether Congress could have reasonably drawn that distinction. We don't have that kind of case before you today. This is simply a straightforward issue of statutory construction. And in – I think in deciding this question, it is perfectly permissible for the Court to look to whether an – an anomalous result would obtain if the Petitioner's position is – is accepted by the Court. And I think it's perfectly reasonable to say that we're not going to do that in the absence of some sort of clear signal from Congress that it wanted to do that. We, this Court, are not going to do that. That was the result the Board reached, and I urge you to do the same. If you have any questions for me. So, you know, hypothetical, was the Martian alien admitted to the United States or not prior to examining the documents? Well, I think – I think in this particular case, Your Honor, he would not have been. I thank the Court for its attention. Thank you, counsel. I bid you good morning. Thank you. Thank you very kindly. The case is here to be submitted. We'll proceed to the argument – the next argument on the
judges: D Nelson, Thomas, Ezra